CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
October 19, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| In re: MOVEit Customer Data Security Breach Litigation | ) ) ) ) ) | Civil Action No. 3:26-mc-00009 |

**MEMORANDUM OPINION**

This matter is before the court on the Plaintiffs' motion to enforce subpoena and compel production of documents, (Dkt. 1), and the Plaintiffs' motion to seal, (Dkt. 2). The Plaintiffs request that this court enforce a subpoena issued in the underlying litigation, as compliance would be required in this court under Fed. R. Civ. P. 45. However, this subpoena dispute presents a potentially recurring issue in a thorny, yearslong multidistrict litigation pending in the District of Massachusetts. Under Fed. R. Civ. P. 45(f), courts can transfer such a motion, including *sua sponte*, to the issuing court in "exceptional circumstances," such as when ruling on the motion risks disrupting the underlying litigation. The court finds such exceptional circumstances in this case. Accordingly, the court will transfer the motion to the United States District Court for the District of Massachusetts.

## I. Background

Since 2023, Progress Software Corporation and thirteen direct and indirect users of its MOVEit Transfer software (collectively, the "Bellwether Defendants") have been embroiled in a multidistrict litigation ("MDL") pending in the District of Massachusetts ("the Massachusetts Action"). (Pls.' Mem. at 1–2 (Dkt. 1-2).) The case stems from a May 2023 cyberattack by the ransomware group C10p, which the Plaintiffs allege "exploited the same

SQL-injection vulnerability in Progress's MOVEit Transfer software to enter every Bellwether Defendant['s] MOVEit environment" and steal private information, including names and other identifiers that cannot be reissued. (*Id.* at 2.)

This motion is before the court on the Plaintiffs' motion to compel production of documents from Consilio, LLC ("Consilio"). (Dkt. 1.) [redacted] [redacted] (Dkt. 1-6); Decl. of Melissa S. Weiner ¶¶ 5, 7 (Dkt. 1-3).) [redacted] (Pls.' Mem. at 2–3.)

The Plaintiffs seek factual information and documents that underlie information already produced by Maximus in the Massachusetts Action. (*Id.* at 3.) In prior discovery, Maximus produced three summary spreadsheets that purportedly contain [redacted] (Decl. of Melissa S. Weiner ¶ 6; Subpoena at 6 (Dkt. 1-4).) [redacted],

[1] [redacted]

[redacted]. (Pls.' Mem. at 3–4.)

Accordingly, the Plaintiffs subpoenaed Consilio on July 8, 2026, seeking "the underlying factual information used to create the three spreadsheets, including the raw data that underlies the produced spreadsheets." (*Id.* at 6.) After engaging in a meet and confer process through September 1, 2026, the parties have reached an impasse. (*Id.* at 5–6.) Consilio "informed [the] Plaintiffs[] that Maximus instructed Consilio not to produce any information or documents responsive to [the] Plaintiffs'-Movants' subpoena." (*Id.* at 6.) Accordingly, on September 28, 2026, "Consilio confirmed it is not producing any documents or information in response to the subpoena." (*Id.* at 6–7.) The Plaintiffs request that this court compel Consilio to produce the underlying information and documents. (*Id.* at 15.)

## II. Legal Standard

Non-party subpoenas are covered by Fed. R. Civ. P. 45. Under the rule, if a non-party objects to a subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production. . . ." *Id.* §§ (d)(2)(A)–(B)(i). However, Rule 45(f) allows for transfer of a subpoena-related motion "[w]hen the court where compliance is required did not issue the subpoena . . . if the court finds exceptional circumstances." *Id.* § (f).

The Fourth Circuit has not spoken on what constitutes "exceptional circumstances" warranting transfer. Instead, courts look to the Advisory Committee Notes regarding the 2013 amendments to Rule 45 for guidance. *See, e.g.*, *In re Bayer Cropscience*, No. 5:16-MC-10-RJ, 2016 WL 7429201, at *3 (E.D.N.C. June 14, 2016); *Found. to Support Animal Prot. v. Vital Farms, Inc.*, No. 2:22-mc-00023, 2023 WL 3446200, at *3 (E.D. Va. Apr. 3, 2023). As one court helpfully

summarized, whether "exceptional circumstances" warrant transfer under Rule 45(f) depends on:

> (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred;
>
> (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and
>
> (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel.

*In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 376 (D.D.C. 2017).

The Advisory Committee Notes emphasize that courts should not reflexively transfer discovery motions to the issuing court. Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment ("[I]t should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."). Instead, courts must balance "the interests of the nonparty served with the subpoena in obtaining local resolution of the motion" against the need "to avoid disrupting the issuing court's management of the underlying litigation." *Id.* Though courts' "prime concern" should be avoiding undue burden on local nonparties, "when [the issuing] court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts," the balance may tip in favor of transfer. *Id.* In this case, transfer is appropriate.

## III. Analysis

1. <u>Resolution of the Subpoena Dispute by this Court Risks Disruption of the Underlying Multidistrict Litigation</u>

First, the need to avoid disruption of judicial management of a complex MDL has been called a "textbook case" of "exceptional circumstances" meriting transfer under Rule 45(f). *In*

*re Syngenta AG MIR162 Corn Litig. v. Syngenta AG*, No. 20-mc-00064, 2020 WL 5988498, at *7 (D. Minn. Oct. 9, 2020). Indeed, many courts have found that "the MDL status of the underlying litigation is surely an 'exceptional circumstance' that weighs strongly in favor of transfer to the Issuing Court under Rule 45(f)." *In re Disposable Contact*, 306 F. Supp. 3d at 378; *see, e.g., In re Niaspan Antitrust Litig.*, Civ. No. JKB-15-1208, 2015 WL 3407543, at *1 (D. Md. May 26, 2015).[2]

"[T]he entire point of the MDL mechanism is to allow one judge to take control of complex proceedings," and "in enacting [the MDL statute], Congress intended to provide *centralized* management of pretrial proceedings and to ensure their just and efficient conduct." *In re Disposable Contact*, 306 F. Supp. 3d at 377 (cleaned up); *see, e.g., Pinney v. Nokia, Inc.,* 402 F.3d 430, 451 (4th Cir. 2005). Plainly, a court in the Western District of Virginia making a consequential discovery decision in a complex District of Massachusetts MDL risks substantial "disrupt[ion to] the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45(f) advisory committee's notes to 2013 amendment.

"While familiarity with the underlying action will not always justify a transfer," it weighs strongly in favor of transfer in "highly complex" cases, like the case at bar. *In re Niaspan*, 2015 WL 3407543, at *1 (citation omitted). This case has been pending in the District of

[2] *See also Syngenta Crop Prot. LLC v. Dorsey*, No. 23-mc-06019, 2023 WL 6209686, at *2 (W.D.N.Y. Sep. 25, 2023) ("The fact that the issuing court is overseeing multidistrict litigation is typically considered an exceptional circumstance warranting transfer, since such litigation is by its nature typically complex."); *In re Nat'l Prescription Opiate Litig.*, No. A-23-MC-00945, 2023 WL 5659047, at *2 (W.D. Tex. Aug. 30, 2023) ("This Court, like others, finds that the complex MDL status of the underlying litigation is an exceptional circumstance weighing strongly in favor of transfer 'because the same concerns about orderliness and disruption that led to the consolidation of actions as an MDL in the first place arise with respect to pretrial disputes regarding subpoenas issued in the context of that complex litigation.'" (citation omitted)); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, Civ. No. 14-MD-2542, 2020 WL 9065791, at *1 (S.D.N.Y. May 8, 2020) ("Courts have deemed the fact that a subpoena was issued in an MDL litigation to be an 'exceptional circumstance' that weighs strongly in favor of transfer to the court that issued the subpoena under Rule 45(f)." (cleaned up)); *In re Pork Antitrust Litig.*, No. 1:22-mc-00025, 2022 WL 1156726, at *2 (S.D. Ind. Apr. 19, 2022) (noting "the MDL proceedings in Minnesota would be significantly disrupted if the subpoena is adjudicated in the Southern District of Indiana").

Massachusetts for over three years; more than thirty complaints have been filed,[3] and the docket spans over 2100 entries. *See In re MOVEit Customer Data Security Breach Litigation*, Docket No. 1:23-md-03083 (D. Mass. Oct. 4, 2023); *cf. In re Disposable Contact*, 306 F. Supp. 3d at 376 (transferring to the issuing court when "more than 50 separate actions" were consolidated into a "lengthy docket of pretrial proceedings" over two years).

The issuing court has deftly managed existing discovery disputes in a centralized fashion, "thereby attempting to avoid duplicative or unnecessary discovery and the risk of piecemeal or inconsistent rulings regarding pretrial matters." *In re Disposable Contact Lens*, 306 F. Supp. 3d at 378; *see also In re Niaspan*, 2015 WL 3407543, at *1. (*See, e.g.*, Massachusetts Action, Dkts. 1316, 1324, 1647.) Centralized resolution is especially important, as the issues raised in this motion likely have already occurred or will recur in other discovery disputes before the issuing court. *See In re Niaspan*, 2015 WL 3407543, at *1. Though this dispute on its face appears to be between the Plaintiffs and Consilio only, the Plaintiffs seek the underlying data that belongs to Maximus. (*See* Pls.' Mem. at 6 (subpoena package seeking "the underlying factual information used to create the three spreadsheets, including the raw data that underlies the produced spreadsheets.").) The Plaintiffs initially sought the information underlying these spreadsheets from Maximus. (Decl. of Melissa S. Weiner ¶ 6.) [redacted] (Pls.' Mem. at 3–4; Decl. of Melissa S. Weiner ¶ 6.)

[3] *See, e.g.,* Massachusetts Action, Dkts. 902, 937, 938, 939, 942–44, 946–52, 976–77, 983–86, 1112, 1228, 1297, 1312–14, 1332, 1535, 1543, 1640, 1712, 1785.

Thus, the Plaintiffs now seek this information from Consilio. The information that the Plaintiffs seek, however, suggests that crux of their dispute is with Maximus. Indeed, Consilio has refused to comply with the Plaintiffs' subpoena not based on its own privilege claim but rather Maximus' intent to assert a claim of privilege. (Pls.' Mem. at 6.) In practice, then, this dispute involves central players in the highly complicated MDL who are subject to a complex web of existing discovery-management procedures.[4] (*See, e.g.*, Massachusetts Action, Dkt. 916, Dkt. 1680.)

For example, the Plaintiffs and the Bellwether Defendants entered into a joint stipulation to create a "subpoena privilege review protocol," which is designed to regulate and streamline the adjudication of privilege disputes like this one. (Pls.' Mem. at 5; *see generally* Joint Stip. and Order Regarding the Subpoena Priv. Review Protocol (Massachusetts Action, Dkt. 1680).) The protocol explains that the Bellwether Defendants "intend to assert any applicable privilege claim over certain documents in the possession" of subpoenaed non-parties, like Consilio. (Joint Stip. at 1–2.) Under the protocol, the Plaintiffs and the Bellwether Defendants agreed to have the subpoenaed non-party turn over any possibly responsive documents to the Bellwether Defendants, who would assert their own privilege claim over the non-party's material via a privilege log delivered to the Plaintiffs. (*Id.* at 2.) Documents placed on the

[4] In addition to being subject to existing procedures, this dispute has the potential to impact outstanding motions before the District of Massachusetts. (*See* Dkt. 1-2 at 2 (requesting, in the alternative, that the subpoenaed documents be produced following Judge Burroughs' order on the Plaintiffs' pending motion for class certification); *In re Disposable Contact.*, 306 F. Supp. 3d at 379 (noting that "transfer would also avoid interference with the Issuing Court's disposition of Movants' motion for class certification—a motion that is currently pending in the underlying MDL"); *In re UBS Fin. Servs., Inc. of P.R. Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015) (recognizing, in transfer analysis, that when "class certification remains pending," the issuing court's ruling on certification "may impact the scope of discovery").

Bellwether Defendants' privilege logs are not to be produced absent agreement between the relevant Bellwether Defendants and the Plaintiffs or an order from "[the issuing] court." (*Id.*)

This protocol seemingly governs the dispute at issue. Consilio is a non-party subpoenaed entity, [redacted] might afford the subpoenaed documents the protection of privilege. ([redacted] *compare* Pls.' Mem. at 6, in which the Plaintiffs describe the data sought as [redacted] *with id.*, detailing Maximus' intention to assert privilege over the information.) Simply, this court is not best positioned to resolve this dispute, as the issuing court is inherently more familiar with the administration of its own protocol, and the Subpoena Privilege Review Protocol requires an order from "[the issuing] court" to resolve subpoena-privilege disputes. (Massachusetts Action, Dkt. 1680 at 2.)

Not only is this dispute subject to protocol managed by the issuing court, but it also represents a dispute that is recurring throughout the MDL. (*See* Pls.' Status Rep. on Privilege Issues at 3, 6 (Massachusetts Action, Dkt. 1954) (status report describing "crosscutting issues that affect multiple Defendants," including "Defendants asserting attorney-client privilege over communications (i) to/from non-parties or involving information about or received from non-parties (including public relations firms and notice vendors)" and "(iii) that appear to have been prepared in service of a non-privileged routine or essential business or technical function").) This dispute falls squarely within the "crosscutting" issue of whether the Bellwether Defendants can properly claim privilege over information provided to or received

from notice vendors like Consilio and whether providing notice constitutes a business or litigation purpose. (*Id.* at 3.)

"[W]here the underlying action is a multidistrict litigation, transfer may be warranted to avoid piecemeal rulings by different judges, reaching different conclusions, in resolving identical disputes." *In re Niaspan*, 2015 WL 3407543, at *1. Because this issue may recur throughout the MDL, "transferring the subpoena dispute to the Issuing Court quite clearly promotes Rule 45(f)'s interests in avoiding disruption of the . . . carefully managed, complex MDL." *In re Disposable Contact*, 306 F. Supp. 3d at 379.

2. Transferring the Subpoena Will Not Unduly Burden Respondent

Consilio will not face an undue burden in responding to this motion to compel in Massachusetts. The Plaintiffs seek production of the data and factual information underlying already-produced summary spreadsheets. (Pls.' Mem. at 1.) According to the Plaintiffs' subpoena, "[a]ll electronically stored Documents shall be produced in the electronic form in which they are kept or maintained." (Subpoena at 14.) As a result, it is highly unlikely that Consilio would be required to travel to Massachusetts to produce the data. *See In re Disposable Contact,* 306 F. Supp. 3d at 380 (noting that, "even if some additional administrative burden would be imposed, it would no doubt be mitigate[d] because the documents addressed in the subpoena can be produced electronically" (internal quotation omitted)). Though the Plaintiffs also seek testimony from Consilio, the Advisory Committee Notes to Rule 45(f) "encourage[]" issuing courts "to permit telecommunications methods to minimalize the burden a transfer imposes on nonparties." Fed. R. Civ. P. 45(f) advisory committee's notes to 2013 amendment; (Subpoena at 1.)

Also, the privilege claims which underlie this dispute are made by Maximus, not Consilio. Thus, the bulk of the effort of defending against this motion to compel will likely fall on Maximus, which is already engaged in large-scale litigation in the District of Massachusetts. Defending against this motion to compel in Massachusetts will thus add little, if any, to the existing burden Maximus faces in the MDL. Further, Consilio is a multi-national corporation with entities registered throughout the United States and the world. (*Entities*, CONSILIO, https://www.consilio.com/privacy/entities [https://perma.cc/SW5N-KMQ9] (last visited Oct. 5, 2026)). However, none list a registered address in the Western District of Virginia. *Id.* Even Consilio's registered agent is in Richmond, Virginia, which is within the Eastern District. (Pls.' Mem. at 4.) "Thus, even assuming that [Consilio] actually has some interest in obtaining local resolution of the motion in this judicial district specifically, those interests are outweighed by other factors that favor transferring [the] motion . . . ." *Smartmatic USA Corp. v. Herring Networks, Inc.*, No. 3:23MC00006, 2023 WL 7329507, at *4 (W.D. Va. Nov. 7, 2023) (cleaned up).

Finally, resolution in this court would likely increase the burden on both parties and on the court. To address the merits of this motion to compel, "the parties might well be required to, *inter alia*, submit supplemental briefing that addresses existing gaps in this Court's understanding of the underlying MDL; and/or negotiate and seek a protective order that permits the filing of unredacted and/or sealed versions of filings already provided to the Issuing Court; and/or appear at a hearing to present their arguments directly to this Court." *In re Disposable Contact*, 306 F. Supp. 3d at 381.

3. <u>The Issuing Court is Best Situated to Decide Whether the Subpoena Should be Enforced</u>

The applicability of procedures implemented by the issuing court as well as the complexity and the yearslong duration of the underlying MDL counsel significantly in favor of the issuing court addressing this motion. The application and interpretation of the Subpoena Privilege Review Protocol, (Massachusetts Action, Dkt. 1680), as well as other procedures including the Stipulated Protective Order, (Massachusetts Action, Dkt. 916), are best carried out by the court that issued them. *See Smartmatic*, 2023 WL 7329507, at *5 (finding that the issuing court was in the "best position" to decide a motion to compel because the decision would likely involve interpretation of the issuing court's orders, which had come as part of a wide-ranging pretrial discovery dispute). "[T]he Issuing Court is not only familiar with the parties in the underlying MDL generally, but it has also already assessed the applicability, scope, and sufficiency of [these policies], and is therefore in a much better position than this Court to make a determination" regarding their effects in this case. *In re Disposable Contact*, 306 F. Supp. 3d at 382; *see also D.R. Horton, Inc. v. NVR, Inc.*, Civ. No. 3:16-MC-053-RJC-DCK, 2016 WL 2942352, at *2 (W.D.N.C. May 20, 2016) (finding transfer was warranted when "[t]he alternative presents the likelihood of inconsistent orders and deadlines regarding subpoenas and/or protective orders" from different district courts).

Even if these procedures did not apply to the dispute at hand, the current "subpoena dispute centers on several points of contention that implicate the underlying MDL," and the issuing court "has already issued a multitude of orders resolving significant procedural and discovery disputes" over the course of three years. *In re Disposable Contact*, 306 F. Supp. 3d at 381–82 (citation omitted); (*see, e.g.*, Massachusetts Action, Dkts. 890, 915–16, 926, 1114, 1304,

1316, 1324, 1466, 1647.) The issuing court is "plainly in a better, more informed position than the instant Court to rule on enforcement of the subpoena at issue here." *In re Disposable Contact*, 306 F. Supp. 3d at 382 (internal quotations omitted).[5]

## IV. Conclusion

After balancing the interest in local resolution of this dispute with the need to avoid disruption of the complex MDL, all relevant factors clearly favor transferring this motion to the District of Massachusetts. Transfer will promote consistent, efficient resolution of a potentially recurring issue within the underlying litigation. Accordingly, the court will **TRANSFER** this matter to the United States District Court for the District of Massachusetts.

An appropriate Order will issue.

**ENTERED** this 19th day of October, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

[5] *See also In re UBS Fin. Servs.*, 113 F.Supp. 3d at 288; *see also, e.g.*, *Duck v. U.S. Sec. & Exch. Comm'n*, 317 F.R.D. 321, 325 (D.D.C. 2016) (finding that the issuing court was "especially well-situated to rule on [the] [m]otion to [c]ompel" in part because the district judge and magistrate judge had "significant involvement" in the underlying case for several years); *Jud. Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 34–35 (D.D.C. 2014) (finding, where the underlying case had been pending for years and had involved numerous discovery disputes, that exceptional circumstances warranting transfer existed).